# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

_____

ALOKE CHAUDHURI,

                Plaintiff,

vs.

KEITH P. GREEN, M. J. HALPIN, PHILLIP G.
POVERO, COUNTY OF ONTARIO, SHUKLA
CHAUDURI,[1]

                Defendants.

_____

DECISION AND ORDER
07-CV-6261 CJS

SHUKLA CHAUDHURI,

                Counter-plaintiff,

vs.

ALOKE CHAUDHURI,

                Counter-defendant.

_____

## APPEARANCES

_____

[1]On August 25, 2008, Plaintiff and Shukla Chaudhuri entered into a stipulation discontinuing the action against Shukla Chaudhuri (Docket No. 35). In paragraph 99 of his response to Defendants' Statement of Facts, Plaintiff commented that, "[t]he action against Shukla was dismissed by Plaintiff and her counterclaims were dismissed by her after a settlement was reached by Plaintiff and Shukla, wherein Shukla waived any rights to any property, alimony, or other monetary amounts from the Plaintiff. (Plaintiff's Affidavit ¶162)."

For Plaintiff/Counter Defendant:     Nira T. Kermisch, Esq.
                                     32 Old Framingham Road, Unit 20
                                     Sudbury, MA 01776
                                     (585) 232-7280

For Defendants Keith P. Green, M.J.   Michael G. Reinhardt, Esq.
Halpin, Phillip C. Povero, County of  Ontario County Attorney's Office
Ontario                               27 North Main Street 4th Floor
                                      Canandaigua , NY 14424-1447
                                      (585) 396-4410

For Defendant Shukla Chaudhuri        Margaret A. Clemens, Esq.
                                      Nixon Peabody LLP
                                      1100 Clinton Square
                                      Rochester , NY 14604
                                      (585) 263-1453

## INTRODUCTION

**Siragusa, J.** Before the Court is the motion (Docket No. 41) by Defendants Keith

P. Green, M.J. Halpin, Phillip C. Povero, County of Ontario (hereinafter "Defendants") for

summary judgment and Plaintiff's opposition thereto (Docket No. 50). For the reasons

stated below, Defendants' motion is granted.

## FACTUAL BACKGROUND

The following are taken from the parties' statements of fact filed pursuant to

Western District of New York Local Rule of Civil Procedure 56.1.[2] Plaintiff was arrested on

June 2, 2006, and charged with violating several sections of the New York Penal Law.

First, with respect to an incident that was alleged to have occurred on April 29, 2006, he

was charged with violating section 135.60(1), Coercion in the Second Degree; section

120.00(1), Assault in the Third Degree; section 135.05, Unlawful Imprisonment; section

---

[2]Defendants filed their statement of facts not as a separate document, but as part of their
memorandum of law (Docket No. 41 at 2–17).

260.10; section 260.10, Endangering the Welfare of a Child. Second, with respect to an incident that was alleged to have occurred on May 30, 2006, he was charged with violating section 240.26 (1) harassment in the second degree; section 135.60(1), coercion in the second degree; and section 260.10, endangering the welfare of a child. Subsequently, on July 6, 2006, he was also charged with unlawful imprisonment in the second degree, in connection with the April 29, 2006 incident.

Plaintiff claims the arrest on June 2, 2006, was without probable cause, and that Defendants maliciously prosecuted him and conspired to arrest him all in violation of his federal constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff also alleges State law causes of action. In his complaint, Plaintiff states that, "All charges brought against Plaintiff by Defendants were dismissed by the various courts in which they were brought, between September, 2006 and January, 2007." (Compl. ¶ 43.) Defendants do not dispute this claim. (Def.s' Statement of Facts ¶ 5.)

In his complaint, Plaintiff has alleged causes of action against his wife, Shukla Chaudhuri, Ontario County Sheriff Phillip C. Povero ("Povero"), Deputy Sheriffs Keith P. Green ("Green") and M.J. Halpin ("Halpin"), as well as the County of Ontario. Plaintiff has plead 13 separate causes of action, which the Court interprets as follows:

1.    Unlawful arrest against Green and Halpin.

2.    False imprisonment against "individual defendants" citing 4th and 14th Amendments.

3.    Unlawful arrest against Povero and Ontario County citing the 4th and 14th Amendments.

4.    Malicious prosecution against Green.

5.     Malicious prosecution against Green citing the 4th and 14th Amendments.

6.     Malicious prosecution against Povero and Ontario County (as a result of Green's acts).

7.     Malicious prosecution against Halpin.

8.     Malicious prosecution against Halpin citing the 4th and 14th Amendments.

9.     Malicious prosecution against Povero and Ontario County (as a result of Halpin's acts).

10.    Conspiracy to falsely arrest against Green and Halpin.

11.    Conspiracy to arrest against Povero and Ontario County.

12.    Conspiracy to violate Plaintiff's civil rights by Green and Shukla.

13.    Conspiracy to violate Plaintiff's civil rights against Povero and Ontario County.

The Court interprets the following causes of action as raising exclusively Federal constitutional claims: 2, 3, 5, 8. The Court interprets the conspiracy causes of action, 10–12, as raising both Federal and State claims. Finally, the Court interprets causes of action 1, 4, 6, 7 and 9 as raising exclusively State causes of action.

## STANDARDS OF LAW

### Summary Judgment

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the

burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d

Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. Fed. R. Civ. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

### Section 1983

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993) (citations omitted).

### False Arrest, False Imprisonment and Malicious Prosecution

Section 1983 does not create any substantive rights, but is merely the enforcement mechanism for the rights guaranteed by the Constitution. *Baker v. McCollan*, 443 U.S. 137 (1979). The first step, therefore, is to identify the specific constitutional right allegedly infringed. *Graham v. Connor,* 490 U.S. 386, 394 (1989). "Where a particular Amendment 'provides an explicit textual source of Constitutional protection' against a particular sort of

government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citations omitted). "The common law tort of false arrest is cognizable under § 1983 only if it also encompasses a violation of federal statutory or constitutional law." *Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995) (citations omitted). Although Plaintiff identified the Fourteenth Amendment as one source for his false arrest and malicious prosecution claims, six justices of the Supreme Court in *Albright v. Oliver*, 510 U.S. 266 (1994) agreed that the Fourth Amendment is the appropriate constitutional source for § 1983 claims in unlawful arrest cases, and a plurality found it to be the appropriate source in malicious prosecution cases as well. *See, Lennon*, *Id*. at 423 n.2.

It is well settled in this Circuit, that favorable termination of a criminal proceeding is not an element of a § 1983 false arrest claim and that the arresting officer's motive for making the arrest is irrelevant in assessing probable cause. If probable cause to arrest exists, the officer's underlying motive is irrelevant. *See, Schwartz*, 1A § 1983 Litigation Claims and Defenses (3d Ed. 1997) at 354; *Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995). Further, in *Phillips v. Corbin*, 132 F.3d 867 (2d Cir. 1997), the court determined that a grand jury's refusal to indict a plaintiff did not, as a matter of law, establish the lack of probable cause.

### *Malicious Prosecution*

In *Rohman v. New York City Transit Authority*, 215 F.3d 208 (2d Cir. 2000), the Second Circuit discussed the elements for a constitutional malicious prosecution claim:

> The elements of a malicious prosecution claim under New York law are "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed,

(3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)); *see also Colon v. City of New York*, 60 N.Y.2d 78 (1983). In order to allege a cause of action for malicious prosecution under § 1983, *Rohman* must assert, in addition to the elements of malicious prosecution under state law, that there was (5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights. *See Murphy v. Lynn*, 118 F.3d 938, 944-46 (2d Cir. 1997); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 116-17 (2d Cir. 1995) (relying in part on common law and New York State malicious prosecution law in analyzing § 1983 malicious prosecution claim, and observing that "[t]he 'appropriate starting point' of the inquiry is the common law of torts" (quoting *Carey v. Piphus*, 435 U.S. 247, 258 (1978))).

> The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—*i.e.*, the right to be free of unreasonable or unwarranted restraints on personal liberty. A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of "seizure."

*Singer*, 63 F.3d at 116; *see also Murphy*, 118 F.3d at 944. "[S]ince the gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under § 1983 must show that the seizure resulted from the initiation or pendency of judicial proceedings." *Id.*

*Rohman*, 215 F.3d at 215.

### *False Arrest*

In *Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996), the Second Circuit discussed the elements of a constitutional false arrest claim, writing:

> Under New York law, a plaintiff claiming false arrest must show, *inter alia*, that the defendant intentionally confined him without his consent and without justification. *See, e.g., Broughton v. State*, 37 N.Y.2d 451, *cert. denied*, 423 U.S. 929 (1975). A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, *see, e.g., Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir.1995), is substantially the same as a claim for false arrest under New York law, *see, e.g., Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995), *cert. denied*, 517 U.S. 1189 (1996);

*Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir.1992); *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir.1991). The existence of probable cause to arrest constitutes justification and "is a complete defense to an action for false arrest," *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994), whether that action is brought under state law or under § 1983. *See, e.g., Broughton v. State*, 37 N.Y.2d at 458 (under New York law, "[j]ustification may be established by showing that the arrest was based on probable cause"); *Singer v. Fulton County Sheriff*, 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").

*Weyant*, 101 F.3d at 852.

### False Imprisonment

In *Rutigliano v. City of New York*, No. 08-0531-cv, 2009 WL 1174657 (2d Cir. May 1, 2009), the Second Circuit addressed a claim of false imprisonment, and wrote that,

The elements of a false imprisonment claim under federal law are substantially the same as under New York law. *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir.2007) ("As in the case of false arrest, we look to ... state law principles to determine the validity of [a plaintiff's] federal civil rights claim based on false imprisonment.").

Defendants respond-and the District Court held-that they cannot be held liable for false imprisonment in this case because probable cause is an affirmative defense to false imprisonment, and such probable cause existed here. We have held that "a finding of probable cause will defeat [New York] state tort claims for ... false imprisonment," *Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 45 (2d Cir.1985) (internal quotation marks omitted), and hence § 1983 false imprisonment claims premised on New York law.

*Rutigliano*, 2009 WL 1174657, 1-2.

### Conspiracy

In *Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995), the Second Circuit in discussing a conspiracy claim raised under § 1983 stated:

In addition to the substantive claims of false arrest and malicious prosecution, Singer also alleged (under § 1983) that the defendants conspired to violate his constitutional rights. While substantive claims under § 1983 are normally brought only against state officials, "a § 1983 claim

may be proved by showing that a person acting under color of state law ... collaborated or conspired with a private person ... to deprive the plaintiff of a constitutional right...." *Fries v. Barnes*, 618 F.2d 988, 990 (2d Cir. 1980) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)); *see also American Broadcasting Cos. v. Cuomo*, 570 F.2d 1080, 1083 (2d Cir. 1977) ("an ordinary citizen who conspires with a state agent to violate the civil rights of a plaintiff is equally liable....").

*Singer*, 63 F.3d at 119.

### Probable Cause

Also in *Weyant*, the Second Circuit discussed probable cause to arrest and held that,

probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime. *See, e.g., Dunaway v. New York*, 442 U.S. 200, 208 n. 9 (1979); *Wong Sun v. United States*, 371 U.S. 471, 479 (1963); *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949). The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, *see, e.g., Singer v. Fulton County Sheriff*, 63 F.3d at 118-19 (affirming summary dismissal of claim on the ground that the facts as to store owner's complaint of theft revealed existence of probable cause), or may require a trial if the facts are in dispute, *see, e.g., Moore v. Comesanas*, 32 F.3d 670, 673 (2d Cir.1994) (where question of whether arresting officer had probable cause was "predominantly factual in nature, [it] was properly presented to the jury").

*Weyant*, 101 F.3d at 852. New York law is similar:

a defendant may be said to act with probable cause to arrest only if a reasonable man in the same position would believe, and defendant did in fact believe, that he had sufficient information to justify initiating a criminal proceeding against plaintiff without further investigation or inquiry ....

*Boose v. City of Rochester*, 71 A.D.2d 59, 68 (N.Y. App. Div. 4th Dept. 1979). As the district court pointed out in *Dukes v. City of New York*, 879 F. Supp. 335 (S.D.N.Y. 1995):

It should preliminarily be noted that the validity of an arrest does not depend upon an ultimate finding of guilt or innocence. *See Pierson v. Ray*, 386 U.S.

547, 555 (1967). Rather, the soundness of the arrest hinges on the existence of probable cause at the time the arrest was made. "[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted). Probable cause is evaluated under an objective standard. *See Lindsey v. Loughlin*, 616 F.Supp. 449, 451 (E.D.N.Y.1985).

*Dukes*, 879 F. Supp. at 340.

### Municipal Liability Under 42 U.S.C. § 1983

In *Gottlieb v. County of Orange*, 84 F.3d 511 (2d Cir. 1996), the Second Circuit wrote concerning municipal liability and held that:

In order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy. *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion); *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). The inference that such a policy existed may arise from "circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991); *see, e.g., City of Canton v. Harris*, 489 U.S. at 390-91; *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992), *cert. denied*, 507 U.S. 961 (1993); *Sorlucco v. New York City Police Department*, 971 F.2d 864, 870-71 (2d Cir. 1992).

*Gottlieb*, 84 F.3d at 518.

### ANALYSIS

The allegations in the complaint concern events that occurred primarily on two dates (April 29 and May 30, 2006)[3] and the subsequent arrest on June 2, 2006. Accordingly, the

---

[3]In his memorandum of law, Plaintiff states he, "was arrested on June 2, 2006 for events which allegedly occurred on April 29, May 29, and May 30, 2006. Defendants, however, contend that mention of any incident occurring on May 29, 2006, in Ms. Chaudhuri's voluntary statement (Docket No. 48-4), is a typographical error and that the events she relates clearly occurred on April 29. (Def.s' Mem. of Law at 20 n. 2.)

Court will begin its review of the case by looking at the evidence of what the arresting officers knew at the time of the arrest.

### *Unlawful Arrest, False Imprisonment and Malicious Prosecution*

Green filed an incident report dated June 2, 2006, in which he related the information he alleges he had at the time of the arrest:

> On 05-01-06, I was contacted by Ms. Chaudhuri who stated that on 04-29-06, she attempted to call 911 but Mr. Chaudhuri prevented her from doing so. She states that Mr. Chaudhuri and her were having an argument and she felt it was getting out of control. Mr. Chaudhuri then pushed her to the ground and began fighting with her over the phone. Mr. Chaudhuri took the phone away from her and then kicked her numerous times in her midsection and punched her in the face and head. ~~Ms. Chaudhuri that~~ Elora, the Chaudhuri's daughter was also present at the time of the incident. Ms. Chaudhuri was able to call on her cell phone and left the line open. A copy of that call was later obtained and secured into evidence. Ms. Chaudhuri states that Mr. Chaudhuri threatened to kill her if she called the police and if the police showed up all they would find is her dead body. Ms. Chaudhuri had a bruise on the left side of her abdomen and a large bump on her head. Ms. Chaudhuri did not want to give a statement to the events that occurred on April 29th because she feared for her [c]hild[']s safety. I explained the process of an order of protection but she was still not comfortable going behind her husband[']s back. I then contacted Victim Assistance Coordinator, Sara Utter, to help offer some assistance to Ms. Chaudhuri. Ms. Chaudhuri then set up an appointment with Sara Utter. Ms. Chaudhuri missed the appointment with Ms. Utter. On 05-30-06, there was another incident at the home and Ms. Chaudhuri Called 911. Dep. Hagen handed the report and Ms. Chaudhuri was removed to a safe house and put in the care of Finger Lakes Domestic Violence and an order of protection was issued out of Ontario County Family Court. On 06-02-06, Ms. Chaudhuri met with Sara Utter, ADA James Ritts, and her domestic violence coordinator prior to her court appearance and gave a statement to the incidents of 4-29-06 and 5-30-06. Mr. Chaudhuri was arrested for assault 3rd, Coercion 2nd, and Endanger[ing] the welfare of a child for the April 29th incidents. Mr. Chaudhuri was arraigned at Victor Town Court and committed to the Ontario County Jail in lieu of $2,500 cash bail.

(New York State Domestic Incident Report No. 612563, Jun. 2, 2006, Docket No. 48 at 1 (strikeout in original).) In his memorandum of law, Plaintiff points out that no victim

supporting deposition supports Green's allegations that any incident occurred on April 29, 2006, and that, in fact, Ms. Chauchuri testified under oath in a related Family Court proceeding as follows:

> Q. And so that was sometime this year?
>
> A. Yes, like just [sic] couple days before I left home.
>
> Q. A couple days before you left home?
>
> A. Yeah.
>
> Q. And you left home on what date?
>
> A. May 30th.
>
> Q. So sometime a few days before May 30th that happened, the kicks and bruises to your abdomen?
>
> A. Mm-hmmm.
>
> Q. Is that a "yes"?
>
> A. "Yes." Sorry.

(Cross-Examination of Shukla Chaudhuri, Chaudhuri v. Chaudhuri, No. 0-00978-06 (N.Y. Family Court, Ontario County Sep. 20, 2006), at 79, Docket No. 50-27.) In the same proceeding, she was asked during cross- and re-cross examination,

> Ms. Chaudhuri, when you said your husband kicked and punched you in the abdomen, when did that occur?
>
> THE WITNESS: Um, exact time?
>
> THE COURT: No, what day? Was that—did that occur on the 30th of May or some other time?
>
> THE WITNESS: No, it—it occurred before that.
>
> THE COURT: How long before that?

THE WITNESS: Um, I exactly don't remember. Maybe like two, three weeks or—

THE COURT: Okay. Anything further from anybody?

MR. JONES: Well, Judge, on that I'm confused now, because I thought I made my question clear. I'll ask her again.

RECROSS-EXAMINATION

BY MR. JONES:

Q. Do you recall telling me a moment ago that the kicks and punches to the abdomen happened a couple days before May 30th?

A. Yeah. I don't really remember. I mean…

Q. But you told me a couple of days and you told the Judge a couple of weeks.

A. Well, days comprise to [sic] weeks, right? Seven days makes a week, so…

(*Id*. at 92.) In a January 29, 2008, Reply Affidavit, Ms. Chaudhuri states, "[o]ne incident occurred on April 29, 2006 when he kick [sic] me and punched me in the abdomen. I had black and blue marks on my abdomen, bumps on my head and bruises on my lips." (Docket No. 41-11 ¶ 5.) In a comprehensive report to Ontario County Undersheriff David Tillman, dated August 18, 2006, Green wrote, *inter alia*, "On 05-01-06, Ms. Chaudhuri contacted me stating that on 04·29·06, Mr. Chaudhuri became physically violent with her and she attempted to call 911 on her cell phone but no police officers came to the residence." (Docket No. 41-10 at 1-2.)

Despite the confusion Ms. Chaudhuri seems to have regarding the dates of the altercations with her husband, the Court must focus on what the arresting officers[4] knew

---

[4]According to Green, he filed the charges related to the incident of April 29, 2006, and Halpin filed the charges relating to "some other date," presumably the incident of May 30, 2006.

at the time of the arrest. The evidentiary proof shows that on April 29, 2009, Ms. Chaudhuri made a call to 911 and that Green found and listened to the tape of that call. (Green Dep. at 30, Docket No. 41-8.) He described what he heard:

> A. It sounded like shouting and then I could hear a male voice speaking a different language. It sounded—I can't say what it sounded like.
>
> Q. Anything else that you could hear?
>
> A. Not that I recall.
>
> Q. The shouting, was that male or female?
>
> A. Male.
>
> Q. All right. Now, did you hear any female voice?
>
> A. I heard a muffled voice. I can't recall what it was.
>
> Q. Okay. Did you hear anything else?
>
> A. Not that I can recall.

(Green Dep. at 32.) Green visited the Chaudhuri home on May 1, 2006,[5] and learned from Ms. Chaudhuri that Plaintiff was out of town. She also told him that "there had been an argument and that [Plaintiff] pushed her down, kicked her and punched her or slapped her." (*Id*. at 33.) He observed that she "had a fat lip and a bruise on her abdomen." (*Id*.) The inside of her lip was black. (*Id*.) She also told him she had a bump on her head and Green observed that as she rubbed her head, her finger was rising over the bump. (*Id*. at

---

(Cross-Examination of Keith R. Green, *Chaudhuri v. Chaudhuri*, No. 0-00978-06 (N.Y. Family Court, Ontario County Jul. 19, 2006), at 46, Docket No. 50-6.) Halpin testified that Green made the arrest. (Halpin Dep. at 26:13–15, Docket No. 41-22.)

[5]Later in the deposition, Plaintiff's counsel misstated the date of the visit as April 29, 2006. (Green Dep. at 45:10–12.)

36.) Thus, as of May 1, 2006, Green had probable cause to believe that Plaintiff had assaulted his wife on or about April 29, 2006.

On June 2, 2006, at 4:59 p.m., in support of the charges, Ms. Chaudhuri signed a "Voluntary Statement—Witness." (Docket No. 48-8.) The statement (in question and answer form) involved an incident that allegedly occurred on May 30, 2006. With regard to that date, Ms. Chaudhuri wrote:

Q. "On May 30th 2006 at approximately 9:48 AM there was an incident at your residence … involving you and your husband. What if anything can you tell me about the incident?"

A: "I had gone to work the night before and my husband had been keeping my keys from me. I had taken his keys and his car to go to work and gone out of the house very quietly. When I came home I went and got my cellular phone and my husband had started following me around the house. I went into our second bedroom and he followed me. He tried to take the phone from me and I wanted to keep it. I was on the bed and he was wrestling with me trying to get the phone. He pushed me onto the floor and forced the phone out of my hand. I had the phone in my right hand and after the struggle, I had a scrape on the back side of my hand. I then went into his bedroom and got my husband's cellular phone. He was chasing me through the house and I ran to one of our other bedrooms. He asked me what I was doing and I told him I was talking to the police."

Q: "When you had your cellular phone, what were you trying to do with it?"

A: "When we argue he takes my belongings from me, he took my passport and takes my phone so I can't call."

Q: "Did you think during this argument that you may need to call the police?"

A: "Oh yeah."

Q: "Your husband took the phone and prevented you from calling the police?"

A: "Yes, the police or anyone."

Q: "Has your husband prevented you from calling the police during past incidents?"

A: "Oh yeah a couple times, he would tell me, if I called the police, he would put my dead body on the floor and just let the police arrest him."

Q: "Where was your daughter during the incident?"

A: "She was in the corridor. She was not in the room but walking in the hallway?" [sic]

Q: "Did your daughter become upset or cry?"

A: "No. She has seen past incidents and I tell her that daddy and I are playing so she won't get upset."

Q: "Could she see what was going on during the incident?"

A: "Possibly. yes."

(Docket No. 48-8 at 1 (quotation marks in original).) Ms. Chaudhuri signed another

"Voluntary Statement—Witness" dated June 6, 2006, in which the following questions and

answers are included;

Q. Ms. Chauduri [sic], the Ontario County Sheriff [sic] Office is investigating an incident that occurred on May [sic] 29, 2006 at about 6:30 pm, at [the Chaudhuri residence] in the Town of Victor, County of Ontario, State of New York, can you tell us what [sic] that night?

A. My husband (Aloke Chaudhuri…) and I had gotten in an argument where he was screaming on [sic] top of his voice. He lost his temper and slapped me in the face. I said he may not touch me. He got more upset and started to punch me in the face and kicked me a couple time [sic] in the stomach area. He also punched me in the head. My lips were black and blue and swollen. Then he didn't stop. I was crying but he kept on. He kicked me a couple more times in my stomach and punched me there also. This caused a bruise on my left side of my stomach. After this happened I wanted to call the police but he wouldn't let me. He confined me to a room with no telephone. When I tried to escape from the room to call 911 he would't [sic] let me call. He said "if you call 911 I will kill you, put your dead body on the floor then go to jail." He always threatened me like that whenever I tried to call the police. Then when he went to bring the baby from the other room I quickly ran to get my cell phone from my purse and called 911 operator

but I couldn't talk because he was already in the room so the phone was on for a while.

Q. Has your husband hit you before?

A. Yes, he is physically and verbally abusive to me. He has threatened to kill me if I called the police or if I tried to leave him.

Q. Is that why it has taken you so long to give a statement to the police?

A. Yes, I was afraid of what he might do to my daughter or me.

Q. Has he ever been abusive to your daughter?

A. Not pysically [sic] but sometimes he would loose [sic] his temper for little things and spank her and yell at her. Ther [sic] are time [sic] when he would yell at me and scare the baby. Once the baby yelled back at him when he yelled at me. He looked at the baby and said "You idiot stop it." He has often scared her by screaming at me and hitting me in front of her. He is not good to her and at times she does not go to him. He has threatened that if I left he would take her from me. He has stated he would make false reports to DSS so they would take the baby away from me.

Q. Would you like to add anything else?

A. No. (SC)

(Docket No. 48-4 at 1-2.) As previously mentioned, above, Green testified at his deposition that the date in the second statement was a typographical error and the events in Ms. Chaudhuri's statement refer to April 29, 2006, not May 29. (Green Dep. at 51:2–18.)

Furthermore, Halpin testified at a pretrial deposition (Docket No. 41-22), and stated that on June 2, 2006,

I had responded to roll call or come to work that day and the sergeant that was working told me at roll call that the DA's office was delaying someone or stalling someone that they wanted arrested and sent me over to take care of the arrest.

(Halpin Dep. at 7:11–17.) Halpin testified that the incident report dated May 30, 2006, was "one of the reports that they went over with you during roll call" (*Id*. at 9:12–16; Docket No. 48-5.) That report, made by Deputy Paul C. Hagen, states the following:

> Ms. Chaudhuri states that Mr. Chaudhuri has refused to give Ms. Chaudhuri her car keys for the past 5 days so she couldn't go anywhere. On 5/30/06, she took a set of keys to another vehicle without Mr. Chaudhuri's knowledge and went to work but when she returned an argument ensued between the two. He then became verbally abusive calling her a bastard, a liar, calling her parents names, *etc*. Ms. Chaudhuri then went upstairs to get her cell phone and Mr. Chaudhuri then came after her and fell on her and wrestled her cell phone from her. She then went to the bedroom and got Mr. Chaudhuri's cell phone and called 911. Upon my arrival, I spoke with both parties. Mr. Chaudhuri denied Ms. Chaudhuri's version of what happened but he did state that he did not want Ms. Chaudhuri calling 911 anymore. He added that this was a matrimonial issue and not a criminal one. I took Ms. Chaudhuri aside and asked if she felt safe here and she stated she did not. Citing cultural issues, she added that over the course of their marriage, Mr. Chaudhuri is very dominant and controlling in what she does and where she goes. He has refused to allow her to call 911 in the past during domestic incidents. Upon offering her a safehouse or shelter, she related she thought that would be best. Mr. Chaudhuri still refused to give Ms. Chaudhuri a set of car keys. I contacted Rachel of the Finger Lakes Family Counseling Center in Geneva who met me at the OCSO, took Ms. Chaudhuri and her daughter and was going to put them in a temporary safehouse and assist them in getting things started in Family Court. Ms. Chaudhuri added that Mr. Chaudhuri has been physically abusive in the past and on numerous occassions, has threatened to kill here if she calls the police. Because Ms. Chaudhuri is originally from India, has no family or support system here, she feels very compelled to do as Mr. Chaudhuri demands. Mr. Chaudhuri has even refused to tell Ms. Chaudhuri where he works because the police came to his workplace to investigate a domestic incident in the past. No offense committed. No further investigation necessary. Case closed.

(Docket No. 48-5.) However, Halpin testified that he was not told that Hagen closed the case, concluding that no offense had been committed. (Halpin Dep. at 9:18–21.) Moreover, on June 2, 2006, Halpin responded to the County Courthouse and met with Jim Ritts of the District Attorney's office who told Halpin, "[t]hat they had spoken to [Ms. Chaudhuri] and

that out of the incident from the 30th that they felt that she hadn't told Deputy Hagen everything and they thought there were some charges that may be appropriate." (*Id.* at 11:4–7.) What Ms. Chaudhuri had not told Hagen, and what Ritts told Halpin, was "[t]hat she had been shoved down and that the daughter was present." (*Id.* at 11:19–20.) In addition, Halpin testified that he "interviewed [Ms. Chaudhuri] in the grand jury room…and then explained to her that her statement and any charges that she would be pursuing would be under penalty of perjury." (*Id.* at 18:17–20.) Moreover, Halpin completed a Report of Suspected Child Abuse or Maltreatment (Docket No. 48-7). A portion of that report calls for "reasons for suspicion" where, Halpin wrote that on May 30, 2006 at approximately 9:45 A.M., "Domestic violence in home, repeated calls involving [Plaintiff] being physically abusive toward [Ms. Shaudhuri] in front of [their daughter]." (Docket No. 48-7.)

Based on the evidentiary proof submitted with the motion, the Court determines there is no material question of fact precluding summary judgment on the causes of action alleging unlawful or false arrest, false imprisonment and malicious prosecution with regard to Green, Halpin, Povero and the County of Ontario. In that regard, the proof submitted on the motion establishes that probable cause for Plaintiff's arrest for all the charges existed at the time of the arrest, and that Green and Halpin acted reasonably and in good faith in relying on the information they obtained primarily from Ms. Chaudhuri. Based upon the Court's determination, it need not discuss Defendants' argument that they are entitled to qualified immunity.

### *Municipal Liability*

Plaintiff argues in his memorandum of law in opposition to summary judgment that his "claim against Povero and the County of Ontario arises out of their condoning the

actions of Defendants Green and Halpin and their failure to respond to Plaintiff's complaint which he filed with Defendant Povero and the County regarding the events subject of this lawsuit." (Pl.'s Mem. of Law at 18.) The only policy Plaintiff raises in his statement of facts is: "It is the policy of Ontario County Sheriff's Office that if there is clear evidence that a crime was committed then the deputies file charges regardless of what the victim wants. (Exhibit "K" to Plaintiff's Affidavit)." (Pl.'s Statement of Facts, Docket No. 50-35 ¶24.) The Exhibit contains an excerpt from Green's deposition testimony in which he was asked the following question and gave the following response:

Q. You do not file charges if the victim says I do not want to file charges.

A. Depending on the crime. If there's clear evidence that a crime was committed then yes, we file charges.

(Green Dep. at 12:16–20.) Plaintiff's statement of facts contains no references to any evidentiary proof the issues raised in the memorandum of law at pages 18 through 19 under the heading, "Plaintiff Stated a Claim for Municipal Liability." As Defendants point out in their memorandum of law, "Plaintiffs complaint contains no factual allegations which might establish a 'custom' or 'policy' that played a part in the claimed violation of federal law." (Def.s' Mem. of Law at 39–40.) The same is true of Plaintiff's Local Rule 56.1 statement of facts. (Docket No. 50-35.) Accordingly, Defendants have met their burden under Federal Rule of Civil Procedure 56 to show that "the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322–23, and the municipal liability claim is dismissed.

*Conspiracy*

In their memorandum of law, at 40, Defendants state: "Plaintiff's complaint alleges a Section 1985 claim of conspiracy (Exhibit A, p 7)." The Court notes that the Exhibit A referred to is Plaintiff's complaint, and at page seven of the complaint is Plaintiff's second cause of action for false imprisonment (Compl. ¶¶ 52–58), as well as the opening paragraphs of Plaintiff's third cause of action for unlawful arrest against Povero and Ontario County (Compl. ¶¶ 59–60). Neither of these states a cause of action for violation of 42 U.S.C. § 1985. However, in the tenth through thirteenth causes of action, beginning on page twelve and continuing through page fifteen, Plaintiff alleges four counts of conspiracy. Accordingly, the Court interprets Defendants' arguments concerning conspiracy as applicable to the tenth through thirteenth causes of action.

Section 1985(3) provides as follows:

> If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985 (1861). Defendants argue that, "Plaintiff's pleadings are void of any facts or even inferences that Defendants acted out of any type of class-based animus. The discovery process also failed to yield any evidence supporting a Section 1985(3) conspiracy claim." (Def.s' Mem. of Law at 41.) The Court agrees that the evidentiary proof submitted on this motion does not support a conspiracy under § 1985.

As to Count 10, Plaintiff contends that "Halpin and Green conspired to have him arrested with regard to the alleged events of May 30, 2006." (Pl.'s Mem. of Law at 19.) Plaintiff argues that, "on June 2, 2006 as he was sitting in a police car he overheard a conversation between Defendants Green and Halpin in which they discussed how to charge Plaintiff when a police report already existed which determined that no crime was committed by Plaintiff." (Pl.'s Mem. of Law at 19.) In his statement of facts (Docket No. 50-35), however, no mention is made of the conversation. In his affidavit, Plaintiff states that, "Shukla and Defendant Green acted together to charge me with numerous crimes, without any basis, but which resulted in severe damages to me, even though I was always exonerated of the charges." (Pl.'s Aff., Docket No. 50 ¶ 15.) He also relates that:

> As I was sitting in Defendant Green's car I overheard a conversation between him and Defendant Halpin regarding having me arrested based on Shukla's complaints on May 30, 2006. At that time Defendant Halpin asked how he could arrest me when another deputy found that no crime was committed. Defendant Green's response was that all Halpin had to do was write a new report and give it a different CR number.

(Pl.'s Aff. ¶¶ 34–36.) Throughout the complaint and in the depositions, Plaintiff infers that Green and his wife were acting in concert to falsely arrest Plaintiff so that Ms. Chaudhuri could divorce him, obtain custody of their daughter, and have Plaintiff pay support. (*See, e.g.*, Pl.'s Aff. ¶¶ 5, 22–23 & 27; Shukla Chaudhuri Dep. at 9–11; Pl.'s Mem. of Law at 22.)

Nevertheless, as discussed in detail above, at 19, Halpin received additional information from Ms. Chaudhuri before arresting Plaintiff. Assuming the conversation did take place as related by Plaintiff, it does not prove a conspiracy to violate Plaintiff's civil rights. The conversation and the arrest do not prove that Halpin and Green were acting "in concert to inflict an *unconstitutional* injury." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (emphasis added); *see also Maliha v. Faluotico*, 286 Fed. Appx. 742, 744 (2d Cir. 2008) ("The district court properly dismissed Maliha's claims against Sara Maliha because Maliha's arrest was constitutional.").

Defendants also argue that the doctrine of intracorporate conspiracy apply to them. That doctrine provides that "officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." *Crews v. County of Nassau*, No. 06-CV-2610 (JFB)(WDW), 2007 U.S. Dist. LEXIS 94597 (Dec. 27, 2007). Plaintiff counters by arguing that this doctrine does not apply to municipal entities, citing *Wahad v. Federal Bureau of Investigation*, 813 F. Supp. 224, 232 (S.D.N.Y. 1993), in support. However, in a later case, the same district distinguished *Wahad* and held that the doctrine *is* applicable to municipal entities:

> Plaintiff argues that courts have recognized a distinction between state and private corporate entities and have declined to apply the doctrine in instances where the employer was a state entity. *See Wahad v. Federal Bureau of Investigation*, 813 F. Supp. 224, 232 (S.D.N.Y. 1993). While the Court in *Wahad* declined to apply the intra-corporate conspiracy doctrine in that particular case, courts in this distract have consistently applied the intra-corporate or intra-enterprise theory in recent cases factually similar to the instant action. *See Danielak v. City of New York*, No. 02-2349, 2005 U.S. Dist. LEXIS 40901, 2005 WL 2347095, at *14 (E.D.N.Y. Sept. 26, 2005) (holding plaintiff's conspiracy claims barred by intra-corporate conspiracy doctrine because all of the individual defendants were

employees of the New York City Police Department, and were acting within the scope of their employment as police officers when they arrested plaintiff); *Johnson v. City of New York*, No. 01-1860, 2004 U.S. Dist. LEXIS 2517, 2004 WL 502929, at *5 (E.D.N.Y. Jan. 12, 2004) (finding that intra-corporate conspiracy doctrine bars plaintiff's claims because all of the individual defendants' actions occurred while they were officers, agents or employees of the City of New York); *Malone v. City of New York*, No. 05-2882, 2006 U.S. Dist. LEXIS 61866, 2006 WL 2524197, at *11 (E.D.N.Y. Aug. 30, 2006) (finding intra-corporate conspiracy doctrine bars plaintiff's claims because all defendants are Department of Corrections employees); *Everson*, 216 F. Supp. 2d at 76 (dismissing plaintiff's conspiracy claim because New York City Transit Authority cannot conspire with one of its own employees under the intra-corporate conspiracy doctrine). Accordingly, Plaintiff's conspiracy claims must be dismissed because the City Defendants cannot be found to have conspired with fellow agents of the City and/or with the City.

*Richards v. City of New York*, No. 05 CV 1163 (SLT)(MDG), 2007 U.S. Dist. LEXIS 23726, 17-18 (E.D.N.Y. Mar. 30, 2007). The Court finds that the intracorporate doctrine does apply here, precluding the conspiracy claims against Green and Halpin. Accordingly, the allegation that Green's and Halpin's alleged conspiracy was carried out pursuant to a policy, custom, usage or practice of Povero or the County of Ontario, or ratified by them, as alleged in Count 11, must also be dismissed.

Additionally, Defendants maintain that Green and Ms. Chaudhuri conspired to deprive Plaintiff of jewelry, as alleged in the Twelfth cause of action, must be dismissed. (Def.s' Mem. of Law at 47.) The allegations stem from Green accompanying Ms. Chaudhuri to the marital home and allowing her to collect property without escorting her, then advising her of how to dispose of it. (Pl.'s Mem. of Law at 22.) In this regard, Green wrote that:

I was advised by Sarah Utter and Ms. Chaudhuri's Domestic Violence Worker to accompany Ms. Chaudhuri to the residence to get some personal property while [Plaintiff] was in custody. Then she would be taken to a safe house. Ms. Chaudhuri was also allowed to take the Honda Civic to drive. I

asked [Plaintiff] where the keys were to that vehicle. He stated that they were above some books in the office. [Plaintiff] stated to me that the residence was locked and we would need a key to get into the residence. He showed me what they [sic] key to the residence was and then asked how he would get back into the residence. I asked if he had an automatic garage door opener. He stated that he did. I told him I would leave the house keys in the garage by the door that goes into the house.… I then followed Ms. Chaudhuri and her Domestic Violence Worker to the residence on Sutters Run. There, Ms. Chaudhuri gathered up personal belongings while I waited on the first floor.… Ms. Chaudhuri was in a hurry to get out of the house before [Plaintiff] returned.…

(Green Memo to Undersheriff Tillman, Docket No. 41-10 at 2.) Ms. Chaudhuri stated in her reply affidavit that,

[a]s far as the pieces of jewelry [Plaintiff] claims I took, they were mine and given to me as gifts. In my culture, when parents gift jewelry to a woman, it is for her to use when she is in financial trouble and needs it. It is a form of security called Sridhan. I did sell some of these gifts, but I had to do so to pay for an apartment and food to support my daughter. I had a young child to support and the sale of this jewelry helped us survive  for a period of time.… I never deliberately disobeyed any court order. Plaintiffs claim that I violated a court order by entering the house to remove some of my personal belongings is incorrect. I had a court order from Family Court permitting me to enter the house and get my and my daughter's belongings.

(Shukla Chaudhuri Reply Aff., Docket No. 41-11 ¶¶ 12 & 19.) Further, during her deposition testimony, Ms. Chaudhuri stated that she did not tell Green she was going to take jewelry (Shukla Chaudhuri Dep. at 98:10–99:10) and stated that, "once like after I left the house like two months I didn't have any money. So I called and said is there anyplace that I can sell my jewelries [sic]?" (*Id*. at 99:19–22.) When Ms. Chaudhuri sold the jewelry, none of the proceeds went to Green or any other employee of the county. (*Id*. at 100:3–15.) The evidentiary proof fails to show that Green "under color of state law ... collaborated or conspired with a private person ... to deprive the plaintiff of a constitutional right...." *Fries*, 618 F.2d at 990. Therefore, the allegation that Green's and Ms. Chaudhuri's alleged

conspiracy was carried out pursuant to a policy, custom, usage or practice of Povero or the County of Ontario, or ratified by them, as alleged in Count 13, must also be dismissed.

***Supplemental Jurisdiction***

When the Federal claims in a complaint have been dismissed, and only State claims remain, the Court may decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1368 (1990). Such is the situation here. Therefore, the Court declines to exercise supplemental jurisdiction over the remaining State cause of action alleging negligence.

## CONCLUSION

For the reasons stated above, the Court grants Defendants' motion (Docket No. 41) for summary judgment with regard to the causes of action alleging constitutional claims (causes of action 2, 3, 5, and 8, as well as the Federal claims in the conspiracy causes of action, 10, 11, 12 and 13) in their entirety and directs the Clerk to enter judgment for the following defendants: Ontario County Sheriff Phillip C. Povero, Deputy Sheriffs Keith P. Green and M.J. Halpin, and the County of Ontario, New York. Since the matter was settled with regard to the only other defendant, Shukla Chaudhuri, and the Court declines to exercise jurisdiction over the remaining State causes of action, the Clerk is directed to close the case.

IT IS SO ORDERED.

Dated:   January 15, 2010
             Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J.  SIRAGUSA
United States District Judge